UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

EDWARD HAMILTON                    DOCKET NO. 6:09-cv-0333

VERSUS                             JUDGE DOHERTY

MICHAEL J. ASTRUE,                 MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT  AND  RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be REVERSED and REMANDED for reconsideration consistent with this report and recommendation.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

Edward Hamilton was born on March 4, 1979, and is currently 31 years old. He has a limited eighth grade education,[1] which was obtained in a "self-contained" special education class,[2] and has no relevant past work experience.[3] Additionally, Mr.

---

[1]      Rec. Doc. 7-1 at 18, 35.

[2]      Rec. Doc. 7-1 at 112.

[3]      Rec. Doc. 7-1 at 17.

Hamilton has a long history of mental impairments as well as a long history of treatment for those impairments.[4]  At the time of his hearing, he was attending the Dr. Joseph Henry Tyler, Jr. Mental Health Clinic in Lafayette, Louisiana every two weeks[5] and taking medication.[6]   Mr. Hamilton has also been incarcerated for aggravated second degree battery,[7] and other members of his family have similarly had mental illnesses and periods of incarceration.[8]  He stated at the hearing that he quit his last job because he was afraid he was going to hurt a co-worker and he wanted to avoid getting into trouble.[9]  He testified that he voluntarily isolates himself because he feels that people are out to hurt him and because he is afraid he might hurt someone else.[10]   He has difficulty concentrating[11] as well as difficulty staying

---

[4]       See, e.g., Rec. Doc. 7-1 at 196.

[5]       Rec. Doc. 7-1 at 40.

[6]       Rec. Doc. 7-1 at 41.

[7]       Rec. Doc. 7-1 at 40.

[8]       Rec. Doc. 7-1 at 40.

[9]       Rec. Doc. 7-1 at 37-38.

[10]      Rec. Doc. 7-1 at 41, 44.  The medical records also support this statement.  See, e.g., Rec. Doc. 7-1 at 190, 191, 194, 282.

[11]      Rec. Doc. 7-1 at 42.

focused.[12]   He has suicidal thoughts.[13]   He hears voices calling his name,[14] has difficulty controlling his emotions (which manifests as frequent crying spells),[15] and feels hopeless.[16]   He is not sure if the medication he is taking actually helps his symptoms.[17]

Mr. Hamilton filed an application for Supplemental Security Income benefits in May 2007,[18] which was denied.[19]   On September 16, 2008, a hearing was held before Administrative Law Judge Neil White, Jr.[20]   Mr. Hamilton was represented at the hearing, but not by an attorney.[21]   A medical expert, Dr. Jimmie Cole, and a vocational expert, Thomas G. Mungall, III, testified at the hearing.[22]

---

[12]     Rec. Doc. 7-1 at42-43.

[13]     Rec. Doc. 7-1 at43.

[14]     Rec. Doc. 7-1 at 45.

[15]     Rec. Doc. 7-1 at 45, 47.

[16]     Rec. Doc. 7-1 at 46.

[17]     Rec. Doc. 7-1 at 48.

[18]     Rec. Doc. 7-1 at 95.

[19]     Rec. Doc. 7-1 at 67-72.

[20]     Rec. Doc. 7-1 at 31-66.

[21]     Rec. Doc. 7-1 at 5, 34.

[22]     Rec. Doc. 7-1 at 33-34.

The ALJ rendered an unfavorable decision on October 9, 2008.[23] Mr. Hamilton requested review of the unfavorable decision, and submitted a brief in support of his request.[24]   The Appeals Council denied the request.[25]  This lawsuit was then filed.

## ASSIGNMENT OF ERRORS

The claimant contends that the ALJ committed legal error in failing to accord any weight to the opinion of Mr. Hamilton's treating psychiatrist, which resulted in an erroneous assessment of Mr. Hamilton's residual functional capacity and in improperly relying upon the testimony of the vocational expert to find Mr. Hamilton not disabled at step five of the requisite analysis.  The claimant further contends that the record was not sufficiently developed.[26]

## STANDARD OF REVIEW

This court's review of the Commissioner's decision to terminate Social Security benefits is limited to determining whether that decision was supported by substantial

---

[23]     Rec. Doc. 7-1 at 10-19.

[24]     Rec. Doc. 7-1 at 5-8.

[25]     Rec. Doc. 7-1 at 1-4.

[26]     Rec. Doc. 8 at 8-9.

evidence and whether the proper legal standards were applied.[27]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[28]   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[29]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[30]   Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[31]   In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[32]

---

[27]      *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[28]      *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[29]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[30]      *Boyd v. Apfel,* 239 F.3d at 704.

[31]      *Singletary v. Bowen*, 798 F.2d 818,823 (5th Cir. 1986).

[32]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

<u>DISCUSSION</u>

A claimant seeking Social Security benefits bears the burden of proving that he or she suffers from a disability.[33]  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[34] Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[35]

In determining whether a claimant is disabled, the ALJ uses a five-step sequential analysis, which requires analysis of the following:   (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other

---

[33]      See, e.g., *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

[34]      42 U.S.C. § 423(d)(1)(A).

[35]      20 C.F.R. § 404.1572(a)-(b).

work.[36]  "Determining whether a claimant is disabled because of a mental condition under the above sequential process can be a difficult task."[37]

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.[38]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[39]

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.[40]  If the Commissioner cannot make a determination at any step, he goes on to the next step.[41]  Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity.[42]  The claimant's residual functional capacity assessment is a determination of the most the claimant

---

[36]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

[37]     *Singletary v. Bowen*, 798 F.2d at 820.

[38]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[39]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[40]     20 C.F.R. § 404.1520(a)(4).

[41]     20 C.F.R. § 404.1520(a)(4).

[42]     20 C.F.R. § 404.1520(a)(4).

can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record.[43]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step, it is used to determine whether the claimant can adjust to any other type of work.[44]

In this case, the ALJ determined, at step one of the analysis, that Mr. Hamilton has not engaged in substantial gainful activity since the date of his application for SSI.[45]

At step two, the ALJ determined that Mr. Hamilton has the following severe impairments:  major depressive disorder, psychotic disorder, and attention deficit hyperactivity, which cause "more than a minimal limitation on [Mr. Hamilton's] ability to engage in work activity.[46]

At step three, the ALJ found that Mr. Hamilton does not have an impairment or combination of impairments that meets or equals a listed impairment.[47]  More particularly, he found that Mr. Hamilton has mild restrictions on activities of daily

---

[43]     20 C.F.R. § 404.1545(a)(1).

[44]     20 C.F.R. § 404.1520(e).

[45]     Rec. Doc. 7-1 at 15.

[46]     Rec. Doc. 7-1 at 15.

[47]     Rec. Doc. 7-1 at 15.

living, moderate difficulties in social functioning, and mild difficulties with regard to concentration, persistence, or pace.[48] He found that Mr. Hamilton has experienced no episodes of decompensation.[49]

At step four, the ALJ found that Mr. Hamilton has the residual functional capacity to perform a full range of work at all exertional levels, but that he is limited to performing simple to moderately detailed routine work at a low level of responsibility that does not require extensive cooperation from others.[50] Although the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms... the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible, as they are not supported by the evidence of record."[51] More particularly, the ALJ found that Mr. Hamilton has not sought regular medical treatment, followed the treatment prescribed, or taken his medications as prescribed[52] and that this reflected poorly on his credibility.

---

[48]    Rec. Doc. 7-1 at 15.

[49]    Rec. Doc. 7-1 at 15.

[50]    Rec. Doc. 7-1 at 16.

[51]    Rec. Doc. 7-1 at 17.

[52]    Rec. Doc. 7-1 at 15.

-9-

At step five, the ALJ found that, based on Mr. Hamilton's age, education, work experience, and residual functional capacity, Mr. Hamilton is capable of working as a dishwasher or grounds keeping worker,[53] and that he, consequently, is not disabled.[54]

Mr. Hamilton's assignments of error regarding the ALJ's findings must be analyzed with the foregoing legal principles in mind.

## A.   THE ALJ FAILED TO CONSIDER MR. HAMILTON'S TREATING PHYSICIAN'S OPINION

When supported by medical evidence, a treating physician's expert opinion as to the existence of a disability is binding unless it is contradicted by substantial evidence to the contrary.[55]   In this case, the ALJ's opinion does not mention the treating physician's diagnoses or opinions but relies on a "Psychiatric Review Technique" prepared by a consulting physician, Kelly Ray, Ph.D., dated July 20, 2007.[56]   Dr. Ray did not meet with Mr. Hamilton to evaluate his condition, and Dr.

---

[53]      Rec. Doc. 7-1 at 18.

[54]      Rec. Doc. 7-1 at 18.

[55]      *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[56]      Rec. Doc. 7-1 at 151-168.

Ray was not present at the hearing.[57]  Therefore, neither Mr. Hamilton nor the ALJ
had the opportunity to ask Dr. Ray about his findings.  Dr. Ray's findings, which are
dated July 20, 2007, are inconsistent with the findings of Mr. Hamilton's treating
physicians at the Tyler Mental Health Center.  Nevertheless, the ALJ adopted Dr.
Ray's findings, and the omission of any reference to the opinions of the treating
physicians indicates that analysis of their opinions by the ALJ was either overlooked
or disregarded.

For example, Dr. Ray lists Mr. Hamilton's diagnosed disorders as including
"psychosis, NOS,"[58] and the ALJ finds that Mr. Hamilton suffers from major
depressive disorder, psychotic disorder, and attention deficit hyperactivity disorder,[59]
even though Dr. Kimberly Laws, one of Mr. Hamilton's treating physicians, changed
the diagnosis from "psychosis NOS" to "schizo-affective disorder, bipolar" on April
15, 2008.[60]  Similarly, in June 2007, Dr. S. Strauss, at the very least an examining
physician, opined that Mr. Hamilton was "gravely disabled."[61]

---

[57]     Rec. Doc. 7-1 at 151-168.

[58]     Rec. Doc. 7-1 at 153.

[59]     Rec. Doc. 7-1 at 15.

[60]     Rec. Doc. 7-1 at 172, 177, 184, 185.

[61]     Rec. Doc. 7-1 at 20.

On the issue of vocational ability, in August 2008, a medical record indicates that there exists a letter, dated August 27, 2007, from a clinician stating that it is doubtful that Mr. Hamilton can be gainfully employed due to chronic psychiatric illness.[62]  A mental functional capacity assessment conducted by Dr. Law on August 13, 2008 indicates that Mr. Hamilton has the following limitations, which are likely to occur more than 50% of the work week:  inability to maintain attention and concentration for two-hour blocks of time; inability to perform activities within a schedule, maintain regular attendant, and be punctual within customary tolerances; inability to complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[63]  The same evaluation by Mr. Hamilton's treating physician, Dr. Law, indicates that he has limitations that are likely to occur between 25% and 50% of the work week, including inability to understand and remember simple instructions, inability to respond appropriately to changes in a work setting, and inability to be aware of normal hazards and take

---

[62]     Rec Doc. 7-1 at 132.

[63]     Rec. Doc. 7-1 at 170-171.

appropriate precautions.[64]  These findings by Mr. Hamilton's treating physician were not discussed in the ALJ's written decision.

In August 2008, Dr. Law also scored Mr. Hamilton at 25 on the Global Assessment of Functioning scale.[65]  A score between 11 and 20 on the GAF scale indicates that a person is in some danger of hurting himself or others or occasionally fails to maintain minimal personal hygiene or is grossly impaired in communication.[66] This is consistent with the medical records and hearing testimony, which establish that Mr. Hamilton has, for many years, had suicidal ideation and deliberately isolates himself from others so as to avoid situations in which he might hurt someone.  In such a situation, the treating physician's opinion should be afforded appropriate weight, and the ALJ's decision lacks any indication that he considered the conclusions reached by Dr. Law and the other physicians at the Tyler Mental Health Center in determining whether Mr. Hamilton is disabled.

The law is clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[67]

---

[64]    Rec. Doc. 7-1 at 170-171.

[65]    Rec. Doc. 7-1 at 171.

[66]    DSM-IV at 32.

[67]    *Loza v. Apfel*, 219 F.3d at 393.

Furthermore, the appropriate inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ."[68]   Because the ALJ disregarded the diagnoses and opinions of Mr. Hamilton's treating physicians, and because the undersigned finds the treating physicians' opinions were not refuted by substantial evidence, the undersigned finds that the ALJ failed to apply the proper legal standards.

## B.   THE ALJ FAILED TO FULLY DEVELOP THE RECORD

In reviewing a claim for benefits, an ALJ is under an obligation to fairly and fully develop the record.  When a claimant is unrepresented by legal counsel, this obligation becomes "a special duty" that requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."[69]   If the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and the ALJ's decision is not supported by substantial evidence.[70]   Still, the burden to demonstrate a disability is always on the claimant;

---

[68]      *Loza v. Apfel*, 219 F.3d at 393.

[69]      *Winston ex rel. D.F. v. Astrue*, 341 Fed. App'x 995, 997 (5th Cir. 2009), quoting *James v. Brown*, 793 F.2d 702, 704 (5th Cir. 1986) and *Kane v. Hacker*, 731 F.2 1216, 1219 (5th Cir. 1984).

[70]      *Winston v. Astrue*, 341 Fed. App'x at 997; *Kane v. Hacker*, 731 F.2 at 1219.

-14-

therefore, if the claimant does not provide sufficient evidence, the ALJ must make a decision based on the available evidence.[71]  Thus, the claimant is required to show that, had the ALJ fully developed the record, evidence would have been adduced that might have altered the result.[72]

In this case, Mr. Hamilton was represented at the hearing but his representative was not an attorney.[73]  Therefore, the ALJ had a heightened duty to make sure that the record was fully developed.[74]

The medical expert who testified at the hearing was not provided with a complete set of Mr. Hamilton's medical records before the hearing nor was he given an ample opportunity to review the records on the day of the hearing.  During the hearing, it became apparent that the medical expert, Dr. Jimmie Cole, had only sixteen pages of medical records rather than a full set of the medical records that had been submitted for consideration.[75]  Dr. Cole complained about a lack of evaluative

---

[71]    *Winston v. Astrue*, 341 Fed. App'x at 997; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[72]    *Kane v. Hacker*, 731 F.2 at 1220.

[73]    Rec. Doc. 7-1 at 5, 34.

[74]    *Winston v. Astrue*, 341 Fed. App'x at 997; *James v. Brown*, 793 F.2d at 704; *Kane v. Hacker*, 731 F.2d at 1219.

[75]    Rec. Doc. 7-1 at 54, 55.

materials and a lack of treatment records in the materials he was provided.[76]  Mr.

Hamilton's representative was then given an opportunity to supplement the record

during the hearing, and Dr. Cole was given an opportunity to review the records;

however, he was only given ten minutes.[77]  Dr. Cole testified that this time was

inadequate for him to thoroughly review the records and answer the questions put to

him.  In response to one question, for example, he said:  "The brief time I had to look

at all these records, I really can't tell you for sure without going through it in more

detail...."[78]

More particularly, Dr. Cole initially testified, on the basis of the first sixteen

pages of medical records he reviewed, that Mr. Hamilton's impairments did not meet

a listing.  After quickly reviewing additional documents, however, he testified that

"there are periods of time that he does meet the listing."[79]  His limited review of the

record, however, precluded him from being able to identify the specific time periods

when Mr. Hamilton did meet the listing.[80]  He attributed his inability to answer the

---

[76]     Rec. Doc. 7-1 at 50, 51, 52, 54.

[77]     Rec. Doc. 7-1 at 54.

[78]     Rec. Doc. 7-1 at 57.

[79]     Rec. Doc. 7-1 at 57.

[80]     Rec. Doc. 7-1 at 57-58.

-16-

question to the brief time he had to review the medical records.[81]  This shows that if the record had been fully developed and if all of the medical records had been before Dr. Cole in time for him to evaluate them before the hearing, his opinions might have been different.

Mr. Hamilton's representative advised the court that the missing records had been submitted electronically about three weeks before the hearing.[82]  The ALJ ascribed Dr. Cole's not having all of the records before him to "the disadvantages of this electronic system... under which we now operate."[83]  There is no evidence that Dr. Cole's failure to obtain all of the records in time to fully and completely review them in advance of the hearing can be attributed to Mr. Hamilton.

At the conclusion of Mr. Hamilton's hearing, the ALJ was not sure that all relevant medical records had been obtained, and he instructed Mr. Hamilton's representative to again submit a full set of the records that Dr. Cole reviewed during the hearing.[84]  The ALJ's duty to fully develop the record encompasses a responsibility to insure that the medical expert has an adequate opportunity to fully

---

[81]     Rec. Doc. 7-1 at 57.

[82]     Rec. Doc. 7-1 at 25.

[83]     Rec. Doc. 7-1 at 55.

[84]     Rec. Doc. 7-1 at 66.

and thoroughly review the documents before being questioned about them.  In this case, however, it is clear that Dr. Cole was first asked to reach conclusions without having reviewed a complete record and was then asked to reach conclusions based on documents that he had not thoroughly reviewed.  Nevertheless, the ALJ relied in large part on Dr. Cole's testimony, particularly, that "claimant's symptoms have improved quickly with treatment" and Dr. Cole's testimony that "with treatment claimant's condition is stable,"[85] in finding that Mr. Hamilton is not disabled.  The ALJ seems to have ignored Dr. Cole's testimony that Mr. Hamilton's impairments do sometimes meet a listing, although he could not say when because of his brief review. Therefore, the ALJ failed to fully develop the record.

When the ALJ fails to develop the record, he does not have before him sufficient facts on which to make an informed decision; accordingly, such a decision is not supported by substantial evidence.  In this case, therefore, the undersigned finds that the ALJ's decision was not based on sufficient facts and, for that reason, was erroneous.

---

[85]        Rec. Doc. 7-1 at 17.

## C.   THE ALJ'S RELIANCE UPON THE VOCATIONAL EXPERT'S TESTIMONY AT STEP FIVE

An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.[86] In making a finding regarding residual functional capacity, all of a claimant's impairments must be considered, including those that are not severe.[87]

At step four of the requisite analysis, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work.  In this case, however, Mr. Hamilton had no past relevant work. Therefore, the analysis properly proceeds to the fifth and final step.

At the fifth step, the ALJ was tasked with determining whether the claimant was able to perform any other work, in light of his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled; if, however, the claimant is not able to do other work and meets the duration requirement, he is disabled.  The Fifth Circuit has held that "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically

---

[86]    20 CFR § 404.1545(a)(1).

[87]    20 CFR §§ 404.1545(a)(2) and 416.945.

-19-

perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."[88]  This is particularly true in cases, like this one, in which the claimant has been diagnosed with mental illness. Bipolar disorders are episodic.[89]  Additionally, "mental illness in general and bipolar disorder in particular... may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment."[90]

In this case, the ALJ cited Dr. Cole's conclusion that "the record shows significant problems with depression at times, typically when claimant has quit taking his medication and following through with prescribed treatment."[91]  But, at step five of the analysis, the ALJ's decision does not reflect whether he considered the reasons given by Mr. Hamilton at various times for his failure to take the medications as prescribed, i.e., unpleasant side effects, lack of transportation to obtain the medications, and temporary stoppages while taking antibiotics.[92] The ALJ's decision similarly does not reflect whether he considered if Mr. Hamilton's lack of compliance with medication and treatment is a symptom of his mental illness or whether the

---

[88]     *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986).

[89]     *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006).

[90]     *Kangail v. Barnhart*, 454 F.3d at 630.

[91]     Rec. Doc. 7-1 at 17.

[92]     Rec. Doc. 7-1 at 61, 186, 190, 191, 197, 266, 288, 298.

episodic nature of the illness or whether Mr. Hamilton's inconsistent compliance with treatment and medication will affect his ability to remain employed if he finds a job.

At step five of the analysis, the ALJ concluded that "[b]ased on the testimony of the vocational expert,... the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of 'not disabled' is therefore appropriate...."[93]  But this conclusion does not take into account the vocational expert's opinions that Mr. Hamilton will likely have trouble remaining employed for a significant time period.

Mr. Hamilton's medical records indicate that he has had a lifelong problem with concentrating and completing tasks.[94]  The vocational expert, Mr. Mungall, testified that the claimant's difficulty concentrating and focusing on tasks and his inability to stay on task for an eight hour day and forty hour week "would probably remove him from consistent work."[95]  Mr. Mungall also testified that, with difficulties in concentration and focus, "I think it may probably end up with what we've seen in the past.. and it would be a month or two months... [and] he'd be out of work."[96]

---

[93]     Rec. Doc. 7-1 at 18.

[94]     Rec. Doc. 701 at 196.

[95]     Rec. Doc. 7-1 at 63.

[96]     Rec. Doc. 7-1 at 63.

These conclusions are consistent with those of Mr. Hamilton's treating physician, which were discussed above.

The vocational expert was also asked about the effect that absences from work might have on Mr. Hamilton's ability to sustain employment if he could find a job. He was asked to assume that Mr. Hamilton's major depression and isolation would cause him to miss two or three days of work a month.[97]  Mr. Mungall testified that this would likely prevent Mr. Hamilton from working on a consistent basis.[98]

In determining whether substantial evidence of disability exists, four factors are weighed: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[99]  The undersigned finds that, in this case, the ALJ relied upon certain testimony of the vocational expert at step five but failed to consider other parts of that expert's testimony as well as the opinions of other experts, including Mr. Hamilton's treating physician that is relevant to the issue of whether Mr. Hamilton can likely sustain employment over time.  Consequently, the ALJ's

---

[97]     Rec. Doc. 7-1 at 63-64.

[98]     Rec. Doc. 7-1 at 64.

[99]     *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005), citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

decision is not grounded upon the proper legal standards and, for that reason, is erroneous.

## CONCLUSION AND RECOMMENDATION

For the reasons given above, the undersigned finds that the ALJ's decision that Mr. Hamilton was not disabled as of May 15, 2007 does not comport with relevant legal standards and was not supported by substantial evidence.

Accordingly, it is RECOMMENDED that the Commissioner's decision be REVERSED and REMANDED for reconsideration in light of this report and recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b) of the Federal Rules of Civil Procedure, parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 8th day of July, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)